UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,                         Criminal No. 07-455 (JNE / SRN)

          Plaintiff,
                                          **REPORT & RECOMMENDATION**

    v.

Steven Jay Novick,

          Defendant.

---

      Ann Anaya, Assistant U.S. Attorney, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for U.S.A.

      Jon M. Hopeman, Felhaber, Larson, Fenlon & Vogt, P.A., 220 South Sixth Street, Suite 2200, Minneapolis, MN 55402-4505, for Defendant.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

      This matter comes before the undersigned United States Magistrate Judge on Defendant's Motion to Suppress Statements, Admissions, and Answers (Doc. No. 12), Motion to Dismiss (Doc. No. 16), and Motion to Suppress (Doc. No. 18). The matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1(a). For the reasons stated below, this Court recommends that the motions be denied.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

      Defendant has been indicted for unlicensed dealing in firearms and on numerous counts of making false statements to federally licensed firearms dealers. (Doc. No. 29.) He now presents several dispositive as well as non-dispositive motions.[1]

---

[1] At the April 8, 2008, hearing on this matter, Defendant orally withdrew his Motion to Suppress Statements, Admissions, and Answers (Doc. No. 12). The Court has addressed Defendant's non-dispositive motions in a separate Order.

Based on an investigation into firearm transactions involving guns that had been recovered in crimes committed in the Twin Cities area, federal officials at the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), including Special Agents David Carriker and Alden Fry, obtained a warrant in May 2007 to search the home of Defendant Steven Jay Novick. The federal officials coordinated with local law enforcement officials, namely the Hudson Police Department. Chief Andy Smith of the Hudson Police Department had previously contacted a reporter for the local Hudson newspaper about the possibility of coverage of police activities.[2]

On the day that officers were planning to execute that warrant, they first met at the offices of Chief Smith to plan and coordinate the search. The day before, and apparently unknown to the ATF agents at the time, Chief Smith had invited the reporter along to witness the search of Defendant's home. Only after they arrived at Defendant's house did Chief Smith introduce Agent Fry to the reporter. At some point during that thorough and extensive search, Chief Smith invited the reporter into Defendant's house to observe. She sat in the open area consisting of the kitchen and living room for perhaps up to 30 minutes and watched as various officers would emerge from different rooms with items of property for Agent Carriker to inventory. The reporter also watched Chief Smith search through a nearby desk. When Agent Fry entered that main room and saw the reporter inside Defendant's home, he informed Chief Smith that she would have to leave. Chief Smith then took the reporter outside and they returned to Hudson.

Based at least in part on the evidence seized during that search, Defendant was eventually indicted in December 2007–but not before the reporter promptly published in May 2007 several

---

[2] The reporter testified at the February 4, 2008, motion hearing. Agents Carriker and Fry testified at the April 8, 2008, continuation of that hearing.

articles regarding his alleged firearms trafficking.

## II.     DISCUSSION

Defendant now moves to dismiss the indictment and to suppress the evidence obtained during the search of Defendant's home.[3]

### A.     Motion to Dismiss

Defendant moves to dismiss Count 1 of the Indictment "for failure to allege an essential element of the offense." (Doc. No. 16.) Defendant contends that the original Indictment does not allege that he acted "willfully." (Doc. No. 17 at 1 (citing Doc. No. 1).) Defendant notes that "[e]ach element of an offense must be charged in the indictment, submitted to a jury, and proven by the Government beyond a reasonable doubt." (Id. at 1-2.) To obtain a conviction for violating the statute at issue, 18 U.S.C. §§ 922(a)(1)(A), 924(a)(1)(D), the Government must prove a defendant "willfully" dealt in firearms without a federal license. Bryan v. United States, 524 U.S. 184, 186, 196 (1998) (stating that willfulness element requires only proof that defendant knew his conduct was unlawful, not proof that he knew of federal licensing requirement).

But any omission in the original Indictment with respect to an allegation of willfulness was corrected by the Superseding Indictment, which amended the allegations to include the assertion that he "willfully engage[d]" in dealing in firearms without a proper license. (Doc. No. 29 at 1.) As long as the Superseding Indictment thus sets "forth the elements of the offense charged" and provides Defendant "with ample detail to assure against double jeopardy and to appraise [him] of what [he] would have to be prepared to meet," the insufficiency of the original

---

[3] After filing his motion to suppress his statements made to ATF officials (Doc. No. 12), Defendant conceded that the context was not custodial and therefore withdrew that motion.

Indictment is no basis to dismiss. United States v. Falcone, 544 F.2d 607, 611 (2d Cir. 1976).

### B.      Motion to Suppress Evidence From Search of Defendant's Home

Defendant also moves to suppress any and all evidence obtained from the search of his home on the following grounds:  (1) the officers executing the warrant brought along a third party, a newspaper reporter, unnecessary to the execution of the warrant, (2) the affidavit in support of the warrant did not establish probable cause, and (3) the particular evidence seized was not authorized by the warrant.  (Doc. No. 18.)  The Court will first address the issue of the warrant being supported by probable cause.

#### 1.      The Search Warrant Is Supported By Probable Cause

Defendant's first basis for moving to suppress the evidence is that the affidavit did not provide probable cause to support the search warrant.  (Doc. No. 18.)  His supporting memorandum, however, does not address this aspect of his suppression motion.  Moreover, the Court's independent review of the affidavit reveals probable cause to support the warrant.

Judicial scrutiny "of the sufficiency of an affidavit should not take the form of *de novo* review," and the reviewing court should accord "'great deference'" to a determination of probable cause. Illinois v. Gates, 462 U.S. 213, 236 (1983) (internal citations omitted).  The Fourth Amendment requires only that the issuing magistrate "had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." Id. at 236.  The magistrate need only conclude that "given all the circumstances . . ., there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 237.  Thus, "'affidavits should be read with common sense and not in a grudging, hyper technical fashion.'" United States v. Goodson, 165 F.3d 610, 613 (8th Cir. 1999).

Here, the seventeen-page, double-spaced affidavit of an ATF Special Agent includes

extensive details about Defendant's purchase and sale of numerous firearms. It also asserts the agent's belief that firearms as well as evidence of illegal firearms transactions would likely be found at Defendant's residence. Accordingly, the Court discerns no basis to conclude that probable cause was lacking.

### 2. The Passive Presence of the Reporter Does Not Require Suppression

With respect to the presence of the reporter during the execution of the search warrant, the United States Supreme Court has ruled that "although the presence of third parties during the execution of a warrant may in some circumstances be constitutionally permissible," such as where the third parties are present "for the purpose of identifying" stolen property, the Constitution does not permit their presence where it "was not related to the objectives of the authorized intrusion," such as where "the reporters did not engage in the execution of the warrant, and did not assist the police in their task." Wilson v. Layne, 526 U.S. 603, 611-12, 613-14 (1999). Accordingly, the Court held that "it is a violation of the Fourth Amendment for police to bring members of the media or other third parties into a home during the execution of a warrant when the presence of the third parties in the home was not in aid of the execution of the warrant." Id. at 614.

The singular thrust of Defendant's argument is that the law enforcement officials executing the warrant willfully tolerated, indeed affirmatively solicited, the presence of a reporter in Defendant's home during the search. There is no point in belaboring the obvious conclusion–based on unambiguous testimony–that the officers executing the warrant to search Defendant's home brought the reporter to the scene and allowed her to enter his home and observe a substantial portion of the extensive search, although she did not assist in the execution of that warrant or otherwise participate in any permissible function in aid of executing that

5

warrant. Thus it is clear that there has been a violation of the Fourth Amendment here.

But Wilson was a civil action for damages, not a criminal prosecution in which the defendant whose home was searched sought to suppress evidence obtained from that search. Id. at 609 (noting that plaintiff brought a Section 1983 action and a Bivens action against state and federal officials respectively). The Supreme Court thus expressly declined to rule upon the question of "whether the exclusionary rule would apply to any evidence discovered or developed by the media representatives." Id. at 614 n.2. Moreover, the Eighth Circuit has not directly addressed this issue.[4]

Several other courts, however, have ruled that allowing reporters into the home of a suspect while officials execute a search warrant does not trigger the exclusionary rule as long as the officers seized the evidence "without media help." Artis v. United States, 802 A.2d 959, 967 (D.C. App. 2002) (adopting distinction between "evidence that media representatives helped recover" and "evidence that the police lawfully recovered without media help"). Accord United States v. Hendrixson, 234 F.3d 494, 496 (11th Cir. 2000) (concluding that "evidence obtained by the police when the media is just present is not subject to the exclusionary rule, while it may remain an open question about whether evidence obtained by the media is subject to the

---

[4] In United States v. Bach, the Eighth Circuit simply cited Wilson as having abrogated on other grounds a Second Circuit decision with which the Eighth Circuit agreed. 310 F.3d 1063, 1066 (8th Cir. 2002). In Smith v. Busby, the court ruled that the district court properly distinguished Wilson because the plaintiffs had alleged that the officers "allowed members of the public to enter, roam about, and steal property from the home, which caused an invasion of their privacy and subjected them to an unreasonable search and seizure." 172 Fed. Appx. 123, 124 (8th Cir. 2006). And in Wise v. Peterson, 2005 WL 361492 (D. Minn. Feb. 14, 2005), the district court distinguished Wilson on the grounds that it concerned officers bringing the media along on "searches of private or residential property," whereas in Wise the search concerned "commercial property during business hours when the property is open to the public." Id. at *3.

exclusionary rule"); State v. Nelson, 691 N.W.2d 218, 229 (N.D. 2005) (same).[5]

Nevertheless, Defendant argues that "the exclusionary rule must apply to all evidence obtained" during the search "because law enforcement officials permitted the Fourth Amendment violation, which constitutes an improper manner of executing the search warrant." (Mem. at 4.)[6] Although Defendant invites this Court to reject the reasoning of cases such as Hendrixson, where it appears the police officers similarly "permitt[ed] the media access to the residence during the search," 234 F.3d at 496, this Court agrees with those that have reasoned that exclusion is not warranted where such violations of the Fourth Amendment are unrelated to the seizure of evidence–that is, where the seizure would have occurred even absent such violations.

Although the presence of the reporter inside Defendant's home while officers executed the search warrant–and the resulting articles she wrote regarding that search and the Government's investigation of Defendant–might be relevant to a civil action for damages, the record is clear that her presence in no way influenced or impacted upon (1) the factual basis on which the Government sought the warrant, (2) the fact that the ATF executed it, or (3) the type and extent of evidence that was seized pursuant to that warrant.  In short, her presence was inconsequential to the seizure of evidence in this criminal prosecution and thus cannot form the

---

[5] In United States v. Boulanger, the court declined to reach the issue of whether the presence of a reporter would require exclusion of evidence because the defendant failed to establish that a reporter "was actually inside the apartment and that this affected his substantial rights," much less "that a media member discovered or developed any evidence." 444 F.3d 76, 86 (1st Cir. 2006).

[6] Defendant's original memorandum in support of his motion to suppress was filed on January 22, 2008, before the evidentiary hearings were conducted.  Following those hearings and with this Court's permission, Defendant filed a supplemental post-hearing memorandum (Doc. No. 45 ("Supp. Mem.")) on April 30, 2008.

basis for suppression of any such evidence here.

Defendant claims that the "good faith" doctrine of <u>United States v. Leon</u>, 468 U.S. 897 (1984), requires the remedy of suppression here because the "police misconduct was flagrant." (Supp. Mem. at 21.) As Defendant recounts in detail, the officers executing the warrant clearly violated Defendant's Fourth Amendment rights by (1) inviting a reporter along to the scene where the officers were executing the search warrant, (2) not just permitting, but rather affirmatively inviting, the reporter inside Defendant's home, (3) allowing the reporter to observe for some 30 minutes the search being conducted and thereby facilitating her ability to see the property seized and hear the officers' discussion of those seized items, and (4) providing the reporter information about the nature of the search before and after it was conducted.[7] (<u>See</u> Supp. Mem. at 1-20.) Armed with this information, the reporter wrote several stories about the search and Defendant's alleged role in facilitating the acquisition of firearms by criminals–articles published several months before Defendant was originally indicted on December 18, 2007.

As the Court in <u>Leon</u> observed, however, "[w]hether the exclusionary sanction is appropriately imposed in a particular case, . . . is 'an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.'" 468 U.S. at 906. As that Court further explained, "the connection between police misconduct and evidence of crime may be sufficiently attenuated to permit the use of that

---

[7] Agent Fry testified that prior to the search he did not provide the reporter with any specific information regarding Defendant, only with "general guidance" as to ATF firearms investigations. (Doc. No. 43 (April 8, 2008, Hearing Transcript) at 80.) But even assuming this is true, it hardly mitigates the harm as even any marginally qualified reporter would have put "two and two" together to conclude that law enforcement was investigating Defendant for weapons trafficking violations. Agent Fry then compounded this error by providing the reporter with further details after the search had been executed but before Defendant was indicted.

evidence at trial." Id. at 911.

Here, the officers' mistakes with respect to the reporter's presence are entirely separate from the evidence they seized. The testimony is unambiguous that inviting the reporter along to witness the execution of the warrant and providing her access to Defendant's home had no impact on the search. The evidence officers obtained would have been seized anyway had the reporter never entered Defendant's home or spoken with law enforcement officers.

The Supreme Court has made it abundantly clear that for a Fourth Amendment violation to warrant suppression of evidence, there must be–at a bare minimum–a causal relationship between the violation and the seizure of that evidence. Hudson v. Michigan, 547 U.S. 586, 592 (2006) (declining to apply exclusionary rule where "the constitutional violation of an illegal *manner* of entry was *not* a but-for cause of obtaining the evidence") (emphases in original); see Leon, 468 U.S. at 905-26 (announcing exception based on executing officer's good faith reliance on facially-valid warrant later found deficient); Dunaway v. New York, 442 U.S. 200, 218 (1979) ("When there is a close causal connection between the illegal seizure and the confession, not only is exclusion of the evidence more likely to deter similar police misconduct in the future, but also use of the evidence is more likely to compromise the integrity of the courts."); Brown v. Illinois, 422 U.S. 590 (1975) (holding that Miranda warnings alone cannot by themselves attenuate the taint of an unconstitutional arrest so as to render admissible "evidence derived therefrom").[8]

---

[8] Defendant claims the present situation is analogous to an unlawful nighttime search that "constitutes an improper manner of executing a warrant." (Mem. at 4-5.) Defendant's reliance on State v. Jackson, 742 N.W.2d 163 (Minn. 2007), in support of this argument, however, is misplaced. In Jackson, the court ruled that evidence obtained in violation of a state statute generally prohibiting nighttime searches (absent a showing of exigent circumstances) required suppression of such evidence. Id. at 167-74. But the Minnesota Supreme Court contrasted that result with the U.S. Supreme Court's decision in Hudson v. Michigan, 547 U.S.

Moreover, even if such a causal relationship exists, intervening events may attenuate that causal relationship. Hudson v. Michigan, 547 U.S. at 592 ("Our cases show that but-for causality is only a necessary, not a sufficient, condition for suppression."); see Leon, 468 U.S. at 910-11 (noting that the Court has "declined to adopt a per se or 'but for' rule that would render inadmissible any evidence that came to light through a chain of causation that began with an illegal arrest"); Dunaway, 442 U.S. at 216 (addressing question "whether the connection between this unconstitutional police conduct and the incriminating statements and sketches obtained during petitioner's illegal detention was nevertheless sufficiently attenuated to permit the[ir] use at trial"), Brown, 422 U.S. at 603 (noting that factors in addition to Miranda warnings may be enough to render a confession "sufficiently a product of free will to break, for Fourth Amendment purposes, the causal connection between the illegality and the confession"). But a Fourth Amendment violation provides no apparent basis to exclude evidence that was not obtained as the product or result of the violation because the exclusionary rule is premised on the fact that "that the challenged evidence is in some sense the product of illegal governmental activity." Nix v. Williams, 467 U.S. 431, 444 (1984) (emphasis added) (addressing doctrines of

---

586 (2006)–which the Minnesota court characterized as having held that a knock-and-announce violation does not require suppression because the police "would have discovered the evidence whether they had knocked and announced or not"–because an improper nighttime search could result in officers obtaining evidence that would not necessarily "be there the following day." 742 N.W.2d at 178. Similarly, Defendant's reliance on United States v. Berry, 113 F.3d 121 (8th Cir. 1997), is misplaced because there the Eighth Circuit ruled that the exclusionary rule would apply where "the night search prejudiced the defendants or [where] there was reckless disregard of the proper procedure for a night search." Id. at 123. Here, the presence of the reporter did not prejudice Defendant by facilitating, focusing or expanding the search or by otherwise being connected to the evidence seized, which officers would have located anyway had the reporter been wholly absent. Nor was there any comparable "reckless disregard" for proper procedure. While the officers' mistakes here might be characterized as ignorance or incompetence, they did not "act in bad faith." Id. It is doubtful that the officers' initial mistake was in bad faith where they eventually–although plainly belatedly–removed the reporter from the scene.

"inevitable discovery" and "independent source").

Thus, the situation here is entirely distinguishable from that at issue in <u>Leon</u>.  <u>Leon</u> provides a good faith exception to the exclusionary rule where the officers executing a warrant that is subsequently found deficient nevertheless relied on the apparent validity of that warrant.  But here, in contrast, there is no question of a good faith reliance on a warrant that, in retrospect, has been found constitutionally deficient.  The constitutional violation here is confined to the officer's actions in allowing the reporter access to Defendant's home, a violation which has no causal relationship to the validity of the warrant, or to the evidence seized pursuant to it.

Defendant also argues that the "objectively reasonable good faith" standard applicable to issues of qualified immunity governs here, noting that <u>Wilson v. Layne</u> has been "clearly established law" since 1999.  (Supp. Mem. at 26.)  Granted, the standard for determining whether governmental officials are immune for their official actions turns on whether the law they allegedly violated was "clearly established" at the time they took such actions.  Likewise, there is no doubt that whether an officer reasonably relied on a warrant that is later found invalid turns on whether that reliance is "objectively reasonable."  <u>Leon</u>, 468 U.S. at 922 n.23 (noting that "good faith inquiry is confined to the objectively ascertainable question" of whether the officer would have recognized the warrant was deficient and "eschew[ing] inquires into the subjective beliefs of" officers).  And, finally, it is clear that "the same standard of objective reasonableness" applicable to the "good faith" issue under <u>Leon</u> also governs the qualified immunity analysis.  <u>Malley v. Briggs</u>, 475 U.S. 335, 344 (1986).  Defendant thus contends that "[t]hese officers cannot have been acting in objectively reasonable good faith."  (Supp. Mem. at 29.)

But none of this supports Defendant's argument that the remedy here for a violation of

his Fourth Amendment rights under Wilson v. Layne "must be determined with reference to the standard of objectively reasonable good faith set forth in Leon." (Supp. Mem. at 27.) Defendant is clearly correct that the exclusionary rule functions to deter police misconduct, not that of the judge or magistrate that issued the invalid warrant subsequently relied upon by the police. Leon, 468 U.S. at 916. And there is no question here that the errors were those of the executing officers, not of the issuing magistrate.

But the evidence seized is nevertheless still causally insulated from the officers' mistakes in allowing the reporter to access Defendant's home and witness the search, as it remains clear that the reporter did not participate in that search in any way or otherwise influence (1) the officers' decision to seek the warrant, (2) their basis for obtaining that warrant, or (3) the seizure of particular property pursuant to it. Any allegation that the officers' misconduct was flagrant or taken in bad faith might be relevant to a determination of liability or damages in a civil action, but does not compel exclusion of the evidence in this criminal proceeding.

In sum, although permitting the reporter inside Defendant's home while the warrant was executed is a clear violation of his Fourth Amendment rights, the Court is not persuaded that suppression of any of the evidence seized is an appropriate, much less necessary, remedy. Rather, a civil damages action would appear to be the appropriate recourse.

### 3. The Evidence Was Properly Seized Pursuant to the Warrant

Finally, Defendant contends that the officers executing the warrant seized evidence that was not authorized by the terms of that warrant. (Doc. No. 18.) The Government asserts that the "items seized were authorized and / or reasonably related to the crime." (Mem. at 7.) It also notes that suppression is not justified simply because an item seized "was not described in the warrant." (Id. (citing United States v. Golay, 502 F.2d 182 (8th Cir. 1974).)

Here, the warrant authorized the seizure of (1) any and all firearms, (2) any records and information regarding violations of statutes governing firearms dealing, and (3) computers and related devices and software used in the commission of such violations. Most of the numerous items seized were firearms and thus plainly within the scope of the warrant. Of the remaining items, only a few might arguably fall outside of the categories of evidence enumerated in the warrant–that is, a warranty deed, a Pentax camera, a U.S. Customs Service Notice of Forfeiture, and miscellaneous business cards.

But Defendant has not supported his motion with any specific argument that particular items of evidence were not authorized to be seized. (See Doc. No. 19.) In any event, the forfeiture notice could likely relate to an attempt to import firearms and the business cards presumably are for Defendant's business of dealing in firearms and thus both plausibly come within the warrant's authorization to seize records regarding unlicensed firearms dealing. Likewise, the deed conceivably reflects a record of property possibly purchased with the proceeds of firearms sales. Similarly, the camera plausibly falls within the warrant's authorization to seize "peripheral computer equipment" and "data storage devices," particularly in light of the fact that the warrant defined "records" and "information" to include such evidence "in whatever form and by whatever means they may have been created or stored," including "any photographic form." Absent a contrary argument or evidentiary showing, the Court cannot conclude that the items were not authorized to be seized.

## III.   RECOMMENDATIONS

Based on the foregoing, and all the files, records and proceedings herein, IT IS HEREBY RECOMMENDED that:

   1.   Defendant's Motion to Dismiss (Doc. No. 16) be DENIED;

  2.  Defendant's Motion to Suppress (Doc. No. 18) be DENIED; and

  3.  Defendant's Motion to Suppress Statements, Admissions, and Answers (Doc. No. 12) be DENIED AS MOOT.

Dated:  May 21, 2008

                s/ Susan Richard Nelson

               SUSAN RICHARD NELSON
               United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by June 5, 2008, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.

### C.     Motion to Suppress Statements [WITHDRAWN]

Defendant first moves to suppress any and all statements he made during an interview with law enforcement officials on the following grounds: (1) such statements were made without the assistance of counsel, and (2) such statements were not given freely and voluntarily. (Doc. No. 12.)

The Government contends that Defendant was not in custody when he made such statements during an interview in April 2007. (Mem. at 3-5.) The protections accorded by Miranda apply only to "custodial interrogations." [ ]. A person is "in custody" for purposes of his Miranda rights when his freedom of action is curtailed to a degree associated with formal arrest. [ ] Such a conclusion is based on the totality of the circumstances, including (but not limited to) such common indicia of custody as (1) whether the subject was informed as to whether he was under arrest or otherwise not free to leave, (2) whether his freedom of movement was restrained, (3) whether he initiated contact with law enforcement authorities, (4) whether strong-arm tactics or deceptive stratagems were used, (5) whether the atmosphere was police dominated, and (6) whether he was arrested after the questioning. United States v. Asxom, 289 F.3d 496, 500 (8th Cir. 2002); United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990). But the ultimate question is whether the person was formally arrested or otherwise subject to a restraint on freedom of movement of the degree associated with a formal arrest and that question is analyzed in terms of how a reasonable person in that individual's position would have understood his situation. United States v. Czichray, 378 F.3d 822, 826-27 (8th Cir. 2004) (clarifying that "[t]here is no requirement . . . that the *Griffin* analysis be followed ritualistically in every *Miranda* case").

This Court's independent review of the DVD of the interview, which occurred at law enforcement offices, reveals that Defendant was not in custody at the time of the interview. Defendant was informed–and he acknowledged–that he was not under arrest or otherwise not free to leave,[9] that he appeared for the interview voluntarily, and that he could terminate the interview at any time. Defendant was not handcuffed or otherwise physically restrained, the interview does not disclose manipulative or deceptive tactics, and he left at the end of the interview. Accordingly, there is no basis to suppress any statement he made during that interview for a violation of his Miranda rights.

---

[9] Although the door to the interview room was locked, Defendant acknowledged that he could leave upon request at any time.